[Cite as *State v. Smith*, 2021-Ohio-1936.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-170 |
| v. | : | (C.P.C. No. 17CR-6560) |
| Brandon D. Smith, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 8, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Siewert & Gjostein Co., LPA*, and *Thomas A. Gjostein*, for appellant. **Argued:** *Thomas A. Gjostein.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Brandon D. Smith, appeals a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas on February 20, 2019 pursuant to a jury verdict finding him guilty of aggravated robbery and robbery. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Jeffrey Bragg, II, and Matthew Crawford are friends who attended high school together. On November 6, 2017, Crawford agreed to drive Bragg to the airport for a flight leaving that afternoon to Oregon. Prior to Bragg's departure, Bragg and Crawford ran errands, which first took them to Chase Bank on Clime Road in Columbus, Ohio. Bragg went into the bank alone while Crawford remained in his car, a white Volvo. As he entered the bank, Bragg passed a woman later identified as Wendy Montgomery. After passing,

Montgomery turned and came back into line behind Bragg. Montgomery struck up a conversation with Bragg. At the teller's counter, Bragg exchanged the bills in his possession for larger denominations, amounting to about $6,000 in cash. Bragg's exchange with the bank teller was overheard by Montgomery. Bragg then left the bank returning to Crawford's car. Bragg asked Crawford to "[w]ait one second" because he had a "weird feeling" about the woman, Montgomery, who was behind him in the bank. (Nov. 6, 2018 Tr. Vol. II at 181.) Bragg and Crawford watched Montgomery as she left the bank and got into a blue Cadillac parked in front of the bank with what Bragg believed to be three men in the car. Bragg wanted to make sure the men did not follow while Bragg and Crawford continued their errands.

{¶ 3} Crawford pulled out of the Chase Bank parking lot and, according to Bragg, the Cadillac with Montgomery and the three men was behind him but turned before Crawford and Bragg reached their next destination, the Fifth Third Bank on Holt Road in Columbus, Ohio. Crawford went into the bank leaving Bragg in the passenger seat of the car with the engine running. While texting on his cell phone, Bragg acknowledged someone who he thought was Crawford getting into the car. Looking over to the driver's side of the car, Bragg saw a man who was not Crawford—a young African-American male who then asked Bragg for his belongings. Bragg refused and opened the passenger side door. As Bragg opened the door, another male appeared, jumping onto Bragg. Initially Bragg believed the male on top of him was punching him in the stomach, until the third blow when he recognized a shiny object that looked like a blade in the hand of his assailant. Bragg immediately grabbed his assailant's wrist while the male in the driver's seat put Crawford's car into reverse, driving the car around the back of the bank toward Santino's Pizzeria. As the driver made a left turn, Bragg threw his assailant out the car door, then looked right at the driver before yanking the steering wheel of the car causing the car to crash into a pole at the back of the pizzeria.

{¶ 4} While in Fifth Third Bank, Crawford saw his car reverse in the parking lot and he ran out of the building as his car was taking off and making a left turn. Crawford testified that a male was hanging onto the passenger side door as the car pulled away, but was thrown off the car when it made the left turn causing him to roll off the car. Crawford ran toward the male who fell just before his car hit a pole in the back of the pizzeria. Crawford then went to his car to check on Bragg.

{¶ 5} Upon impact with the pole, the airbags deployed and the driver ran over to Bragg where an altercation ensued as the driver attempted to take Bragg's backpack and bank envelope. The second male from the passenger side of the car also appeared and struggled for Bragg's backpack. Bragg managed to maintain his backpack while the two men ran away with Bragg's bank envelope down a back alley behind the pizzeria toward the coffee shop. The bank envelope was empty as Bragg had already put the money into his wallet. Bragg sustained injuries in the altercation which he testified resulted from the blade.

{¶ 6} Detective David P. Phillips with the Columbus Police Department ("CPD") robbery unit responded to the Fifth Third Bank on Holt Road on November 6, 2017 and performed a preliminary investigation by speaking with witnesses, surveying the scene, and then contacting the Crime Scene Search Unit. Detective Thomas W. Burton, assigned to the CPD robbery unit, Crime Scene Search Unit, arrived at the scene at the request of Detective Phillips. While at the scene, Detective Burton processed the scene by taking photographs and collecting evidence; a black lighter and a cell phone found outside the driver's side door. At the request of Detective Phillips, Detective Burton retrieved trace evidence using DNA swabs from the black lighter, cell phone, and the steering wheel and gearshift from Crawford's car.

{¶ 7} Based on a conversation with witnesses and Bragg and Crawford, Detective Phillips believed that a female came into contact with Bragg at Chase Bank prior to the robbery. Detective Phillips went to the Chase Bank where Bragg exchanged his money and spoke with the teller familiar with the woman who came into contact with Bragg earlier that day. The teller identified the woman as Montgomery, indicating that Montgomery opened a checking account. The teller provided Detective Phillips with contact information for Montgomery and still photographs, one of Montgomery speaking with Bragg while in the bank and another of a Cadillac with a soft convertible top that was believed to be involved in the robbery. Although the Fifth Third Bank did not have surveillance video or exterior cameras, Detective Phillips interviewed two employees from the nearby PNC Bank, also located on Holt Road, who observed two African-American males run and jump into a light blue Cadillac parked in the PNC Bank parking lot.

{¶ 8} In addition to other witnesses, Detective Phillips spoke with Montgomery through the course of his investigation and developed names of possible suspects; appellant

and Terrael Alls. Two separate photo arrays were created by Detective Phillips. In the photo arrays, Bragg identified Alls as the male who cut him with a blade, but was unable to identify appellant. Bragg later identified appellant during one of the court dates prior to trial as the first male involved in the robbery who jumped into Crawford's driver's seat. Crawford recognized Alls from his freshman year in high school and was able to identify Alls in the photo array as the male who fell off his car. Crawford indicated to police that he did not get a good look at the driver of his car, therefore a photo array of appellant was not presented to Crawford. Montgomery identified both appellant and Alls in the photo arrays presented to her. At some point, Savion Martinez and Montgomery admitted they waited in appellant's blue Cadillac convertible during the robbery and Alls admitted to taking part in the robbery.

{¶ 9} Appellant was arrested at the home of the mother of his child on November 27, 2017 for the robbery involving Bragg and Crawford. At the same time, CPD impounded a blue Cadillac with a convertible top that was at one time titled to appellant and parked in front of the home where appellant was arrested. Detective Phillips believed the same Cadillac was involved in the November 6, 2017 robbery. A small pocketknife was found in the Cadillac and swabbed for DNA.

{¶ 10} Detective Phillips requested DNA testing from the trace evidence collected by Detective Burton from the scene of the robbery as part of the investigation. DNA samples were also taken from appellant, Alls, Bragg, and Crawford by Detective Phillips. Miranda Aufiero, a DNA analyst from the CPD crime lab, was admitted as an expert at trial and provided the results of the DNA testing. The results of the trace evidence collected at the scene of the robbery using DNA swabs were inconclusive due to insufficient quality or quantity of the DNA from the black lighter, pocketknife, front of the cell phone, steering wheel, and gearshift. The DNA swab from the front of the cell phone resulted in a mixture of four DNA profiles; however, expert analysis determined appellant was the major contributor.

{¶ 11} On December 6, 2017, appellant was indicted for the following criminal offenses that occurred on or about November 6, 2017: aggravated robbery, in violation of R.C. 2911.01 a felony in the first degree; robbery, in violation of R.C. 2911.02 a felony in the second degree; robbery, in violation of R.C. 2911.02 a felony in the third degree; kidnapping, in violation of R.C. 2905.01 a felony in the first degree; and attempted grand

theft of a motor vehicle, in violation of R.C. 2923.02 a felony in the fifth degree. Two victims are named in the indictment, Bragg and Crawford.

{¶ 12} Prior to trial, plaintiff-appellee, State of Ohio, dismissed Counts 3, 4, and 5 of the indictment, specifically: robbery, in violation of R.C. 2911.02; kidnapping, in violation of R.C. 2905.01; and attempted grand theft of a motor vehicle, in violation of R.C. 2923.02.

{¶ 13} On November 6, 2018, appellant proceeded to trial and was represented by counsel. Bragg, Crawford, Montgomery, Detective Phillips, Detective Burton, and Aufiero testified. The matter was tried to a jury who, after deliberation, found appellant guilty of aggravated robbery and robbery. Appellant was scheduled to be sentenced on December 19, 2018.

{¶ 14} On November 26, 2018, the state filed a motion on speedy trial and requested a hearing. The state's motion was filed in response to appellant's November 7, 2018 oral motion to dismiss based on a violation of his speedy trial rights. The state's motion indicates the state became aware of *State v. Price*, 122 Ohio App.3d 65 (10th Dist.1997) the day after trial and, on review, filed their motion to present the requisite evidence in accord with *Price* in support of the state's position that appellant's speedy trial rights were not violated. *Price*. The trial court converted appellant's sentencing hearing to a motion hearing. Appellant filed a response to the state's motion on January 11, 2019 and the state filed supplemental motions in support on January 2 and 14, 2019, and a memorandum contra on January 16, 2019.

{¶ 15} The state's motion on speedy trial came for an evidentiary hearing on January 30, 2019. The trial court took the matter under advisement after the presentation of witness testimony and admission of exhibits. On February 5, 2019, the trial court filed an entry denying appellant's motion to dismiss for speedy trial violation, finding "[i]n light of the numerous time-waivers that defense counsel executed on Defendant's behalf; the periods of continuances granted on Defendant's behalf; and the periods of reasonable continuances granted other than upon Defendant's motions, this Court finds that Defendant's R.C. 2945.71 speedy-trial rights have not been violated." (Entry at 6.)

{¶ 16} On February 20, 2019, the trial court conducted a sentencing hearing. The state conceded that Counts 1 and 2 merge and elected to have appellant sentenced to Count 1 only. The trial court imposed a sentence of 8 years as to Count 1 of the indictment, with 5 years mandatory post-release control, and a jail-time credit of 233 days.

{¶ 17} Appellant filed a timely notice of appeal.

## II. Assignments of Error

{¶ 18} Appellant assigns the following three assignments of error for our review:

> [I.] THE APPELLANT HAD HIS RIGHTS TO DUE PROCESS OF LAW VIOLATED UNDER ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION, WHEN TRIAL COUNSEL WAS RENDERED INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S ERROR IN MISCALCULATING THE NUMBER OF PREEMPTORY CHALLENGES IN VOIRE [SIC] DIRE, AND FOR FAILING TO RAISE THE AFFIRMATIVE DEFENSE OF AN ALIBI.
>
> [II.] APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AND AS GUARANTEED BY STATUTE PURSUANT TO OHIO [R]EVISED CODE §2945.71 ET SEQ.
>
> [III.] APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1 & 16 OF THE OHIO CONSTITUTION AND THE CONVICTION WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Analysis

### A. First Assignment of Error: Appellant's Claim of Ineffective Assistance of Counsel is Without Merit

{¶ 19} In his first assignment of error, appellant asserts a claim of ineffective assistance of counsel. In support, appellant raises the following issues: (1) counsel miscalculated the number of peremptory challenges, (2) counsel failed to assert affirmative defenses on behalf of appellant, and (3) there was a breakdown in the attorney-client relationship.

{¶ 20} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result."  *Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim must satisfy a two-prong test under *Strickland*. First, appellant must demonstrate that trial counsel's performance was deficient. *Id.* at 687. A deficient performance requires a showing that counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, appellant must be able to prove prejudice by the deficient performance of counsel. *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 21} In support of his claim of ineffective assistance of counsel, appellant first argues counsel was deficient by failing to object to the court's miscalculation of the remaining number of peremptory challenges.[1] Appellant avers this alleged failure amounts to not only ineffective assistance of counsel, but also reversible error.

{¶ 22} Peremptory challenges are governed by Crim.R. 24(D), which addresses the number of available peremptory challenges, and Crim.R. 24(E), which addresses the manner in which preemptory challenges are exercised. In non-capital felony cases, and applicable to the matter before us, each party may peremptorily challenge four prospective jurors. Crim.R. 24(D). The manner of exercising peremptory challenges is governed by Crim.R. 24(E), which provides:

> Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge, but does not constitute a waiver of any subsequent challenge. However, *if all parties, alternately and in sequence,*

---

[1] In addition to his argument regarding the exercise and calculation of peremptory challenges, appellant argues the trial court judge misstated the controlling rule applicable to peremptory challenges. The record reflects the trial judge stated: "Pursuant to Criminal Rule 47, you have four peremptories with respect to the first 12 members of the panel. Then you have one preemptory with respect to the two alternates, whomever they end up being at the time." (Nov. 6, 2018 Tr. Vol. II at 139.) Review of the record reflects that although the number of the applicable rule of criminal procedure was incorrectly cited by the trial court, the statement of the law was correct. (*See* Nov. 6, 2018 Tr. Vol. II at 139.) Appellant points to no place in the record that would lead this court to believe that the misstatement of the number of the rule of criminal procedure led to confusion for appellant's counsel.

> *fail to exercise a peremptory challenge*, the joint failure
> constitutes a waiver of all peremptory challenges.

(Emphasis added.)

{¶ 23} The record reflects the following: The state exercised its first peremptory challenge and appellant passed. The state exercised its second peremptory challenge, and then appellant exercised his second. As to the third peremptory challenge, the state passed, then appellant passed. Upon appellant failing to exercise his third peremptory challenge, the trial court concluded "[a]ll right. So that means the challenges will stop with respect to the first 12." (Nov. 6, 2018 Tr. Vol. II at 141.) Appellant believes that one peremptory challenge remained after both the state and appellant waived their third peremptory challenge, and as a result a miscalculation occurred. Appellant avers that this miscalculation, whether on the part of the court or appellant's counsel, rises to the level of plain error.

{¶ 24} A staff note to Crim.R. 24 regarding a July 1, 2005 amendment states, "Crim.R. 24 is amended to reflect four recommendations of the Task Force on Jury Service. See *Report and Recommendations of the Supreme Court of Ohio Task Force on Jury Service* (February 2004)." As to Crim.R. 24(E), the staff note specifically provides:

> **RULE 24(E) Manner of exercising peremptory challenges**
>
> New Crim.R. 24(E) (formerly Crim.R. 24(D)) is amended to make two related principles regarding peremptory challenges more clear. One principle is that failure of a party to exercise a given peremptory challenge waives that challenge but does not waive any other peremptory challenges to which the party may otherwise be entitled.
>
> The other principle is that *consecutive passes by all parties or sides waives all remaining peremptory challenges*. The Task Force concluded that, contrary to the language and intent of former Crim.R. 24(D), "often courts and attorneys will assume that once a peremptory challenge is waived all remaining peremptory challenges are waived." *Report and Recommendations, supra*, at 22. The amended language is designed to deter the incorrect assumption perceived by the Task Force.

(Emphasis added.) July 1, 2005 Staff Note, Ohio Crim. R. 24. Accordingly, failure to exercise a given peremptory challenge does not waive other peremptory challenges, however, consecutive passes by all sides waives all remaining peremptory challenges.

{¶ 25} In support of his argument that the trial court committed reversible error, appellant points to *Columbus v. Hunt*, 10th Dist. No. 88AP-512 (Mar. 30, 1989). We find *Hunt* to be instructive for another reason, however, in particular the holding that Crim.R. 24(D) expressly provides that the failure of a party to exercise a peremptory challenge shall constitute a waiver of that challenge. *Id.*

{¶ 26} The Eighth District Court of Appeals explains the mechanics of Crim.R. 24(E) by comparing the difference between waiver of a peremptory challenge, and waiver of all remaining peremptory challenges by holding:

> We disagree with the defendant's contention that by virtue of waiving its third peremptory challenge, the state waived any remaining peremptory challenges. Crim.R. 24 clearly provides that "the failure of a party to exercise a peremptory challenge constitutes a waiver of **that** challenge." [Emphasis added]. The rule then states that a waiver of *all remaining* peremptory challenges does not occur *until and unless all parties, alternately and in sequence, fail to exercise a peremptory challenge.*

(Emphasis added.) *State v. Skipper*, 8th Dist. No. 81963, 2003-Ohio-3531, ¶ 26-27; *see also State v. Jones*, 160 Ohio St.3d 314, 321, 2020-Ohio-3051, ¶ 26 (in accord with Crim.R. 24(E), when the state failed to exercise the state's third and final peremptory challenge, he waived it, and the trial court erred in permitting him the opportunity to subsequently exercise it against any juror); *State v. Smith*, 1st Dist. No. C-180227, 2020-Ohio-649, ¶ 23-25 (waiver of opportunity to exercise fourth peremptory challenge as to selection of prospective jurors does not allow for an additional pick).

{¶ 27} On review of the record, we find the trial court did not miscalculate the number of peremptory challenges but, rather, pursuant to Crim.R. 24(E), the state and appellant failed to exercise peremptory challenges alternately and in sequence, constituting a waiver of all peremptory challenges and therefore the peremptory challenges were waived. Contrary to the argument of appellant, one peremptory challenge did not remain.

{¶ 28} In further support of his claim of ineffective assistance of counsel, appellant argues that trial counsel failed to file a notice of alibi involving at least one witness,

appellant's co-worker, and counsel failed to call appellant's co-defendant, Alls, against appellant's wishes. Pre-trial issues on the record reflect that, at the commencement of trial, appellant's counsel stated he did not file a notice of alibi and did not intend to call any witnesses, other than for cross-examination, and that appellant did not intend to testify. Defense counsel indicated to the trial court that appellant told a detective he was at work, presumably during the commission of the crime; however, defense counsel informed the court he did not have any witnesses to call.

{¶ 29} The possibility of an alibi defense was explored during trial when counsel inquired on cross-examination of Detective Phillips and his investigation into appellant's employment at a local barbershop.  Detective Phillips answered on cross-examination that he visited the barbershop and spoke with appellant's manager who indicated he was not able to provide a set schedule for appellant as the barbers can come and go, and the video cameras at the barbershop and a business nearby could not verify appellant's presence.

{¶ 30} A discussion between appellant's trial counsel and the trial judge on the record reflects that appellant wished for counsel to call Alls to testify, but appellant's counsel was opposed.  Appellant's trial counsel stated: "I'm going to try to talk him out of it. I've given him the transcript."  (Nov. 7, 2018 Tr. Vol. III at 361.)  Ultimately, counsel did not elect to call Alls to the stand despite the record reflecting statements by counsel that this was against appellant's wishes.

{¶ 31} This court has held:

> [T]he decision whether to call a witness is generally a matter of trial strategy. *See State v. Treesh*, 90 Ohio St.3d 460, 490 (2001) ("Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court"); *State v. Smith*, 115 Ohio App.3d 419, 426 (3d Dist.1996) ("it is well established that counsel's decisions concerning which witnesses to call at trial fall within the realm of trial strategy and tactics and generally will not constitute ineffective assistance of counsel").

*State v. Dunkle*, 10th Dist. No. 13AP-687, 2014-Ohio-1028, ¶ 19.

{¶ 32} We note the trial record does not contain a proffer of what appellant's co-worker or Alls would have testified to had they been called as a witness, nor do we have specifics as to appellant's alleged alibi other than what we can glean from the record. Counsel's cross-examination of Detective Phillips was thorough and did not establish the

prospect of an alibi. Further, appellant's counsel's statements are clear that Alls was not a witness he intended to call. Statements made by appellant's counsel reflect that counsel discussed the matter of Alls testifying with appellant and provided appellant with a transcript, presumably related to testimony or statements given by Alls. Appellant's counsel's decision whether to file notice of an alibi defense and what witnesses to call are squarely within counsel's purview as trial tactic and strategy and based on review of the record in this case, this court will not second guess the decision of appellant's trial counsel.

{¶ 33} Appellant's last argument in support of his claim of ineffective assistance of counsel alleges the attorney-client relationship broke down. In support, appellant cites to a portion of the trial during which appellant requested new counsel and alleged ineffective assistance of counsel related to speedy trial issues. As further evidence of the breakdown, appellant points to a conversation between counsel and the trial court discussing whether appellant will call Alls to the stand where counsel states "[h]e's wearing me out." (Nov. 7, 2018 Tr. Vol. III at 360.) At the conclusion of the exchange, the trial court denied appellant's request for new counsel.[2]

{¶ 34} In *Citibank, N.A. v. Lapierre*, 10th Dist. No. 13AP-30, 2013-Ohio-3016, ¶ 7, this court held:

> In relevant part, App.R. 16 requires that an appellant shall
> include in its brief "[a] statement of the assignments of error

---

[2] In denying appellant's request for new counsel, the trial court responded to appellant's request for new counsel and a continuance for the same with the following:

> All right. Upon review of the arguments of counsel and the commentary from Mr. Smith, I feel compelled to explain to you, Mr. Smith, that what you're asking for is inherently contradictry [sic] and it really doesn't make any sense.
>
> Because on one hand you've argued that your speedy trial rights have been violated and you want to get to trial, you want to get to resolution. Yet, just one minute later you're asking the Court to grant a continuance, to leave you in jail even longer for some unknown duration of time, for you to try to contact an attorney, come up with money to retain an attorney, let that attorney prepare for trial which could take several months; and that doesn't make any sense. You're either in a hurry to resolve this case or you're not in a hurry and you want more time to try to get a new lawyer and start this whole process over again.
>
> What I find that this really means is you're coming up with bizarre delay tactics that are intended to disrupt the decorum and the importance of these proceedings, and I don't take kindly to that.
>
> So your request for a continuance to obtain new counsel is denied.

(Nov. 7, 2018 Tr. Vol. III at 310-11.)

presented for review, with reference to the place in the record where each error is reflected" and "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates." App.R. 16(A)(3) & (4). Pursuant to App.R. 12(A)(1)(b), appellate courts must "[d]etermine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." "Thus, this court rules on assignments of error only, and will not address mere arguments." *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70.

As this allegation was not raised as an assignment of error, the court will not address appellant's argument regarding a breakdown of the attorney-client relationship.

{¶ 35} On review of appellant's arguments in support of his claim of ineffective assistance of counsel, this court does not find counsel's performance was deficient in his representation and even if arguendo appellant had so established, appellant has not made any allegation that he was prejudiced by the course of action undertaken by counsel or that he was prejudiced as a result. *Strickland* at 686.

{¶ 36} Accordingly, we overrule appellant's first assignment of error.

### B. Second Assignment of Error: Appellant's Oral Motion on the Second Day of Trial Failed to Timely Assert Violation of Appellant's Speedy Trial Rights

{¶ 37} In his second assignment of error, appellant asserts his right to a speedy trial was violated.

{¶ 38} "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Sixth Amendment to the U.S. Constitution. The Ohio Constitution separately guarantees the right to a speedy trial in Article I, Section 10. *State v. Boyce*, 10th Dist. No. 19AP-313, 2021-Ohio-712, ¶ 9, citing *State v. Williams*, 10th Dist. No. 13AP-992, 2014-Ohio-2737, ¶ 10, citing *Barker v. Wingo*, 407 U.S. 514, 515 (1972). In analyzing a claim that the state violated a defendant's constitutional speedy trial rights, courts utilize a two-pronged inquiry. " 'First, the defendant must make a threshold showing of a "presumptively prejudicial" delay to trigger application of the *Barker* analysis.' " *State v. Squillace*, 10th Dist. No. 15AP-958, 2016-Ohio-1038, ¶ 22, quoting *State v. Sellers*, 10th Dist. No. 08AP-810, 2009-Ohio-2231, ¶ 14, citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). "If a presumptively prejudicial delay exists, then the second inquiry requires the court to

consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) the resulting prejudice to the defendant." *Squillace* at ¶ 22, citing *Doggett* at 651. Generally, delay is presumptively prejudicial as it approaches one year. *State v. Keaton*, 10th Dist. No. 16AP-716, 2017-Ohio-7036, ¶ 9.[3]

{¶ 39} Pursuant to R.C. 2945.71(C): "A person against whom a charge of felony is pending: * * * (2) Shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(E) provides, in relevant part, that for purposes of computing time, each day during which a defendant is held in lieu of bail on the pending charge shall be counted as three days. A defendant may be discharged if he or she is not brought to trial within the time required by R.C. 2945.71(C)(2); however, the motion must be "made *at or prior to* the commencement of trial." (Emphasis added.) R.C. 2945.73(B). The Supreme Court of Ohio holds: "[An] appellant's failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 37, citing *State v. Thompson*, 97 Ohio App.3d 183, 186-87 (6th Dist.1994).

{¶ 40} On the second day of trial, appellant raised, pro se, an oral motion that his speedy trial rights were violated. While presenting his argument to the trial court, appellant stated he wanted to raise the issue of speedy trial at a hearing held on August 27, 2018, but did not.[4] Appellant argued that his counsel's approval with regard to continuances was without his consent and further that he never waived his rights otherwise. Appellant then requested the court calculate the number of days that the criminal charges against him have been pending. In response, the state denied the assertions of appellant and requested the court proceed, pointing out that appellant's motion was raised during the second day of trial. The trial court indicated that on its own review of the record, the court was satisfied that the proper continuances were made and concluded the inquiry.

---

[3] Appellant argues he was arrested over 360 days prior to the commencement of his trial as he was arrested on November 27, 2017 and trial commenced November 6, 2018. Review of Ohio case law reveals it would be a close call whether 360 days reaches the "presumptively prejudicial" threshold contemplated in the first step of the *Barker* analysis. Furthermore, appellant's delay in asserting his speedy trial rights on the second day of trial must also be considered and weighed against him.

[4] The trial court noted in its entry filed February 5, 2019 denying appellant's motion to dismiss based on speedy trial rights, "[a]t no time on November 5, 2018 or November 6, 2018 did Defendant or his attorney address statutory speedy trial rights with the Court." (Entry at 3.)

{¶ 41} The state argues, pursuant to R.C. 2945.73(B), appellant should have raised his motion at or prior to the commencement of trial. Appellant also cites Crim.R. 12(C)(1) in support of this position, which requires that "[p]rior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial: (1) Defenses and objections based on defects in the institution of the prosecution." Appellant did not file a reply brief in response to the state's position stated herein.

{¶ 42} The Second District recently reiterated a holding by the Supreme Court on such a waiver: "An appellant's 'failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal.' *State v. Humphrey*, 2d Dist. Clark No. 02-CA-25, 2003-Ohio-2825, ¶ 17, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 37." *State v. Taylor*, 2d Dist. No. 28463, 2020-Ohio-3481, ¶ 32. Regarding the same, this court has held:

> The constitutional and statutory rights of speedy trial may be waived, which was done in this case. The foregoing statute quite plainly provided for a motion to be made "at or prior to the commencement of trial." The record does not show such motion was made by, or for, appellant. The right to speedy trial is essentially guaranteed by federal and state constitutions. It is also statutory in Ohio, which defines the basis and limits of such right, by statute. Consequently, waiver of the right to speedy trial includes waiver not only in the context of constitutional standards but also within the provisions of statutory requirements defining speedy trial by establishing the specific time limitations for bringing a person to trial.

*Columbus v. Long*, 10th Dist. No. 75AP-688 (May 13, 1976). In *Long*, this court distinguished two cases cited by counsel in support of the argument on appeal, *State v. Cross*, 26 Ohio St.2d 270 (1971), and *State v. Coatoam*, 45 Ohio App.2d 183 (11th Dist.1975), highlighting that those cases involved motions for discharge being made prior to or at the commencement of trial, and noting that Long's failure to do so constitutes a waiver and "any other view would render the statute meaningless." *Long.*

{¶ 43} This court has also held, "where, within such required period, the case is set for trial for a date after the expiration of the required period, and the defendant is given ample notice thereof, he may not sit [idly] by and let the time within which he should be

brought to trial expire and then take advantage of the provisions of R.C. 2945.73(D)." *State v. Westbrook*, 47 Ohio App.2d 211, 215 (10th Dist.1975).

{¶ 44} With regard to waiver, we also note the record before us contains several instances in which appellant's counsel waived his speedy trial rights by jointly requesting a continuance with the state and in one instance appellant's counsel requested a continuance because he was in trial. Although appellant argues he was not in agreement with his counsel, this court has previously recognized that a defendant is bound by his counsel's waiver even if the waiver may have been executed without the defendant's consent. In *State v. Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, ¶ 23, this court observed the Supreme Court's analysis of this issue in *Taylor*, 2002-Ohio-7017, and *State v. McBreen*, 54 Ohio St.2d 315 (1978):

> In *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, the defendant discharged his appointed counsel shortly before trial and proceeded pro se. The defendant in *Taylor* asserted that *McBreen* was distinguishable from his case, because he "objected to the waiver [of his speedy trial rights] filed by counsel and demanded that counsel be discharged." *Taylor* at ¶ 33. The Supreme Court rejected the defendant's argument and noted that "[u]nder the *McBreen* syllabus, counsel could validly waive defendant's right to a speedy trial without his consent." *Id.* at ¶ 36. Accordingly, based on the holdings in *Taylor* and *McBreen*, we find unpersuasive defendant's contention that the continuances executed by his appointed counsel were ineffective simply because defendant later sought to discharge his appointed counsel. *See also State v. Palo*, 11th Dist. No. 2002-A-0095, 2005-Ohio-6906.

{¶ 45} In support that appellant's right to a speedy trial was violated, appellant argues in accord with *Price* that the state was required, at the time appellant made his motion to dismiss on speedy trial grounds, to provide the necessary evidence to prove the trial was within the speedy trial limit and if not, dismissal was required because appellant presented a prima facia case, i.e. 270 days had passed since appellant was arrested. *See* R.C. 2945.71(C)(2). The state argues appellant's argument herein is misplaced, citing *Price* at 69, footnote 2, holding that the state could have addressed this issue at sentencing. The state distinguishes the timeline here as appellant's speedy trial motion was heard on

January 30, 2019, after appellant was convicted but prior to sentencing.[5]  We find no merit to appellant's argument.

{¶ 46} Accordingly, for the reasons articulated above, we overrule appellant's second assignment of error.

### C. Appellant's Conviction was not Against the Manifest Weight of the Evidence and Therefore was Also Supported by Sufficient Evidence

{¶ 47} In his third assignment of error, appellant asserts his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.  In support, appellant points in particular to: (1) Bragg and Crawford's inability to initially identify appellant and Bragg's subsequent identifications which he deems were improper, (2) the "perversely unbelievable" testimony presented by Montgomery, and (3) lack of appellant's DNA evidence at the scene.

{¶ 48} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15.  Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.  *Id.*  In that regard, we first examine whether appellant's convictions are supported by the manifest weight of the evidence.  *Id.*, *see State v. Sowell*, 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 89.

{¶ 49} An appellate court acts as a "thirteenth juror" when determining whether a verdict is against the manifest weight of the evidence.  *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 125.  "Under this standard of review, an appellate court weighs the evidence in order to determine whether the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "  *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  "However, in engaging in this weighing, an appellate court must bear in mind the factfinder's superior,

---

[5] On November 26, 2018, the state filed a motion on speedy trial stating it became aware of *Price* the day after appellant raised his oral motion for dismissal based on a speedy trial violation. Based on the state's reading of the requirements provided in *Price*, the state, in its motion, laid out the chronological history and evidence in support of its position that appellant's speedy trial rights were not violated.

first-hand perspective in judging the demeanor and credibility of witnesses." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶ 50} In support of his third assignment of error, appellant argues the jury's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because neither Bragg nor Crawford were initially able to identify appellant in the CPD photo array.

{¶ 51} "[A] witness' inability or unwillingness to identify a defendant in a pre-trial setting does not necessarily discredit an in-court identification." *State v. Ndiaye*, 10th Dist. No. 13AP-964, 2014-Ohio-3206, ¶ 9, citing *State v. Dennis*, 10th Dist. No. 05AP-1290, 2006-Ohio-5777, ¶ 13 (witness' in-court identification does not render verdict against the manifest weight of the evidence even though witness was unable to identify the defendant in a photo array prior to trial); *State v. Johnson*, 163 Ohio App.3d 132, 2005-Ohio-4243, ¶ 57 (10th Dist.) (finding a witness' failure to identify a defendant in a black and white photo array prior to trial did not discount the witness' confident, in-person identification of the defendant during a bindover hearing).

{¶ 52} Bragg testified that a young African-American male jumped into the driver's seat next to him while he was waiting for Crawford. Bragg testified that although he looked right at the male's face when he got into the car, he could not identify him in the photo array because he was not sure and did not want to falsely accuse someone. Subsequently, at a court appearance, Bragg saw appellant in the hallway and informed the prosecutor that the individual he saw in the hallway was the person who jumped into the driver's seat next to him.

{¶ 53} On cross-examination, Bragg explained he had no doubt who appellant was: "When I just seen his face, I wasn't exactly sure; but when I seen his whole build and how he was looking at me in the courtroom, I already knew - - or in the hallway, I knew exactly who it was; because it was the same person that was sitting next to me in the car." (Nov. 6, 2018 Tr. Vol. II at 204.) The second victim, Crawford, was not provided with a photo array to identify appellant based on statements made by Crawford to law enforcement that he did not get a good look at the driver at the time of the robbery.

{¶ 54} At trial, Bragg testified he was not sure when he saw the photo array and he did not want to falsely accuse someone. Bragg's inability to identify appellant in a photo array, and statements that he was not willing to identify someone in error, does not

discredit Bragg's subsequent identification of appellant. In fact, Bragg's response to cross-examination reflects confidence in his identification and any previous hesitation on the part of Bragg shows a genuine understanding of the importance of accurate identification.

{¶ 55} Appellant furthers his argument that the jury's conviction was against the manifest weight of the evidence by asserting that Bragg improperly and prejudicially identified him. Bragg testified he viewed pictures of appellant and Alls on CPD's Facebook page, however, Bragg's testimony reflects he believed he identified appellant in court prior to viewing details regarding the robbery on CPD's Facebook page. Crawford viewed a post on Facebook that provided a description of the robbery, but no pictures.

{¶ 56} The jury heard the testimonies of Bragg and Crawford regarding their ability to identify appellant and the credibility given to the testimony was weighed by the jury with the balance of the remaining evidence and testimony.

{¶ 57} Appellant next supports his argument that the jury's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence by classifying Montgomery as the one who "caused" the robbery and further describing the testimony given by Montgomery as "perversely unbelievable." (Appellant's Brief at 28-29.) This court notes that appellant does not provide further specifics as to his issue with the testimony given by Montgomery, or why appellant deems the testimony to be "perversely unbelievable."

{¶ 58} Montgomery testified she was with her boyfriend, Martinez, and Alls on November 6, 2017. Montgomery testified Martinez called appellant to give Montgomery a ride to Chase Bank. Montgomery identified appellant as the owner of a blue Cadillac and the person who gave her a ride to Chase Bank. Martinez and Alls accompanied appellant and Montgomery in appellant's car to Chase Bank. Montgomery could not recall if she went to Chase Bank to open a bank account or make a deposit, but did recall that Bragg was in line in front of her and she struck up a conversation with him about his tattoos.

{¶ 59} Once Montgomery left the bank and returned to the car, she informed the three men waiting in the car that the man in front of her at the bank withdrew a large sum of cash, approximately $6,000. From there, Montgomery testified she was not aware that the car she was in, driven by appellant, was following Crawford and Bragg, but that the white Volvo was several cars in front of them. Montgomery testified appellant parked his car by a coffee shop on Holt Road, which was on the opposite end of the location of Santino's

pizzeria. Appellant then exited the car with Alls. Once appellant and Alls exited the car, Martinez slid over to the driver's seat. Montgomery testified that appellant and Alls did not say why they left the car and she did not know what they were doing. A few minutes later, appellant and Alls retuned and the group drove back to Montgomery's home. Once in the home, appellant asked if anyone had seen his cell phone.

{¶ 60} Montgomery identified appellant in a photo array for CPD and at trial during her testimony. Montgomery testified to having a criminal record and also a history of drug use that began after the death of her child. Appellant describes Montgomery as the person who caused the robbery and participated as much as appellant and Alls without getting into Crawford's car.

{¶ 61} The jury was given specific instructions by the trial court regarding how to assess the testimony of Montgomery:

> Testimony was introduced tending to show that a witness, [Montgomery], had been convicted of crimes. You may only consider this testimony to judge her credibility and the weight to be given to her testimony. You may not consider the prior convictions for any other purpose.
>
> You have heard testimony from [Montgomery], who may be said to be an accomplice. The testimony of an accomplice does not become inadmissible because of her complicity, moral turpitude, or self-interest; but the admitted or claimed complicity of a witness, as well as any special motives she may have in testifying, may affect her credibility and make her testimony subject to grave suspicion and require that it be weighted - - weighed with great caution.
>
> It is for you, the jurors, in light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth, or its lack of quality and worth.

(Nov. 7, 2018 Tr. Vol. III at 485.)

{¶ 62} Whether appellant takes issue with Montgomery's drug use, criminal history, or presence in appellant's car during the commission of the robbery, the jury heard the testimony given by Montgomery and weighed the given testimony in accord with the instructions given by the trial court.

{¶ 63} In appellant's last argument in support that the jury's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence,

appellant asserts the only piece of evidence linking him to the crime is DNA discovered on a cell phone found outside the victim's car, along with the DNA of four other individuals. Appellant further contends that no DNA evidence was found on the steering wheel or gearshift where appellant was purportedly driving.  However, the evidence and testimony at trial reflect that a cell phone with appellant's DNA as the major contributor was found outside the driver's side door of Crawford's car at the scene of the robbery.  Further, Montgomery testified that after the incident occurred, appellant asked if anyone had seen his cell phone.

{¶ 64} In addition to specific instruction on how to evaluate the testimony of Montgomery, the trial court also gave the following instructions to the jury describing its role in assessing credibility and weight of the evidence:

> You are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence.
>
> To weigh the evidence you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives.
>
> These tests include the appearance of each witness upon the stand; the manner - - the witness' manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear, and know the things concerning the testimony; the accuracy of the witness' memory; frankness, or lack of it; intelligence; interest; and bias, if any; together with all the facts and circumstances surrounding the testimony.
>
> Applying these tests you will assign to the testimony of each witness such weight as you deem proper.
>
> You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.
>
> * * *
>
> The testimony of one witness, if believed by you, is sufficient to prove any fact.

(Nov. 7, 2018 Tr. Vol. III at 481-83.)

{¶ 65} This court has held the factfinder is in the best position to observe the demeanor, voice inflection, and gestures of the witnesses as they testify. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58. "In determining witness credibility, the jury is entitled to consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony." *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 35, citing *State v. Ealy*, 10th Dist. No. 15AP-600, 2016-Ohio-1185. Here, the jury had the opportunity to evaluate the demeanor and testimony of each witness and the facts and circumstances surrounding the testimony and, on deliberation, found appellant guilty of robbery and aggravated robbery. Bearing in mind the factfinder's superior, first-hand perspective, and on review of the record, this court in weighing the evidence as the thirteenth juror, does not find the jury lost its way.

{¶ 66} Accordingly, we overrule the third assignment of error.

**IV. Conclusion**

{¶ 67} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and BROGAN, JJ., concur.

BROGAN, J., retired, formerly of the Second Appellate District,
Assigned to active duty under authority of the Ohio
Constitution, Article IV, Section 6(C).