[Cite as *State v. Hall*, 2024-Ohio-4914.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                  :

                                     No. 20AP-434

v.                                                      :           (C.P.C. No. 18CR-1232)

Jeffrey B. Hall,                                  :           (REGULAR CALENDAR)

    Defendant-Appellant.            :

State of Ohio,                                    :

    Plaintiff-Appellee,                  :

                                       No. 20AP-435

v.                                                      :           (C.P.C. No. 17CR-4124)

Jeffrey B. Hall,                                  :           (REGULAR CALENDAR)

    Defendant-Appellant.            :

---

D E C I S I O N

Rendered on October 10, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond.*

**On brief:** *Jeffrey B. Hall*, pro se. **Argued:** *Jeffrey B. Hall.*

---

APPEALS from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} In these consolidated appeals, defendant-appellant, Jeffrey B. Hall, appeals from judgments of conviction and sentence entered by the Franklin County Court of

Common Pleas following appellant's entry of guilty pleas in Franklin C.P. Nos. 17CR-4124 and 18CR-1232.

**I. Facts and Procedural History**

{¶ 2}    On July 27, 2017, appellant was indicted in case No. 17CR-4124 on 31 counts of unlawful securities practices, in violation of R.C. 1707.44, and 2 counts of theft, in violation of R.C. 2913.02.  On March 13, 2018, appellant was indicted in case No. 18CR-1232 on 30 counts of unlawful securities practices, in violation of R.C. 1707.44, 1 count of theft from a person in a protected class, in violation of R.C. 2913.02, and 1 count of telecommunications fraud, in violation of R.C. 2913.05.

{¶ 3}    On April 23, 2018, plaintiff-appellee, State of Ohio,  filed a motion for joinder of the two cases, which appellant opposed.  On November 15, 2018, the public defender withdrew from case No. 17CR-4124, and the trial court appointed attorney Jeremy Dodgion to represent appellant in that case.  On March 7, 2019, the trial court filed a decision and entry granting the state's motion for joinder.  On April 22, 2019, appellant filed a notice with the trial court that he was acting pro se in case No. 18CR-1232, following the court's appointment (on April 19, 2019) of attorney Dodgion to represent him in that case.  On February 2, 2020, appellant filed a pro se motion to discharge/dismiss the indictment in case No. 18CR-1232 on speedy trial grounds.

{¶ 4}    On February 4, 2020, appellant entered a guilty plea in case No. 18CR-1232 to one count of unlawful securities practices, a felony of the third degree, and one count of telecommunications fraud, a felony of the third degree.  Also on that date, in case No. 17CR-4124, appellant entered a guilty plea to one count of unlawful securities practices, a felony of the third degree, one count of unlawful securities practices, a felony of the fourth degree, and one count of unlawful securities practices, a felony of the second degree.

{¶ 5}    On July 13, 2020, appellant filed a pro se motion to withdraw guilty plea in case No. 18CR-1232.  On July 24, 2020, appellant filed a motion to withdraw guilty plea in case No. 17CR-4124.  The state opposed both motions.  On August 4, 2020, the trial court conducted a hearing on the motions.  On August 5, 2020, the trial court filed entries in both cases denying appellant's motions to withdraw guilty plea.

{¶ 6}    By judgment entry filed August 21, 2020, the trial court sentenced appellant in case No. 18CR-1232 to 24 months each on both counts, with the counts to run concurrent

to each other and to case No. 17CR-4124. By judgment entry also filed on August 21, 2020, the trial court sentenced appellant in case No. 17CR-4124 to 4 years on Count 20, 24 months on Count 5, and 12 months on Count 13, with each count concurrent to each other and to case No. 18CR-1232, for a total sentence of 4 years incarceration.

## II. Assignments of Error

{¶ 7}    Appellant appeals and assigns the following seven assignments of error for our review:

> [I.] Appellant's Right to a Speedy Trial was violated under the *Sixth Amendment* to the *U.S. Constitution*, article 1 section 10, of the *Ohio Constitution*, and the laws of the *State of Ohio*, *R.C. 2945.71*.
>
> [II.] Appellant was denied effective assistance of counsel pursuant to the *Sixth Amendment* to the *U.S. Constitution* and article 1, section 10 of the *Ohio Constitution* when counsel arranged and advised him to enter a plea when his right to a speedy trial had been violated and knowing he had a *Motion to Discharge* pending.
>
> [III.] Counsel was ineffective in case #17CR-4124, (Hall #1) where appellant's right to a speedy trial was violated under the *Sixth Amendment* of the *U.S. Constitution*, and the *Due Process Clause* when counsel did not move for discharge.
>
> [IV.] The trial court erred in not allowing appellant to withdraw his guilty plea prior to sentencing.
>
> [V.] The trial court abused its discretion in not ruling on defendant's request for a continuance to withdraw his plea.
>
> [VI.] On case 17CR-4124, defendant was denied effective assistance of counsel as guaranteed by the *Sixth amendment* of the *U.S. Constitution* due to manifold attorney failures.
>
> [VII.] Defendant's pleas were not knowingly, intelligently and voluntarily entered as he was denied effective assistance of counsel due to manifold attorney failures.

(Sic passim.)

## III. Analysis

{¶ 8}    For purposes of review, we will consider the assignments of error out of order. We first address appellant's seventh assignment of error, in which he contends his

guilty pleas in both case Nos. 17CR-4124 and 18CR-1232 were not knowingly, intelligently, and voluntarily entered. In his pro se brief, appellant asserts he did not agree with the facts to which he pled, and that he believed "he would be allowed to withdraw his plea later, after the return of his computers." (Appellant's Brief at 53.) Appellant further argues he did not understand his pleas were final, and believed the trial court was still going to rule on his speedy trial motion.

{¶ 9} The Supreme Court of Ohio has observed that " '[w]hen a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily,' " and " '[f]ailure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, ¶ 9, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Under Crim.R. 11(C), a trial judge is required to determine whether a criminal defendant "is fully informed of his or her rights and understands the consequences of his or her guilty plea." *Id.* at ¶ 10. In determining whether a defendant understood the nature of a charge, an appellate court "should examine the totality of the circumstances." *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, ¶ 56.

{¶ 10} A trial court is required to "strictly comply with Crim.R. 11 as it pertains to the waiver of federal constitutional rights," which include "the right to trial by jury, the right of confrontation, and the privilege against self-incrimination." *State v. Marcum*, 10th Dist. No. 07AP-905, 2008-Ohio-2292, ¶ 6, citing *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). However, with respect to the waiver of non-constitutional rights, "substantial compliance with Crim.R. 11(C) is sufficient." *Id.*, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). With respect to non-constitutional rights, a trial court must inform the defendant of "the effect of his plea, the nature of the charges, * * * the maximum penalty," and that "the court may proceed to judgment and sentence after accepting the guilty plea." *State v. Chapple*, 10th Dist. No. 23AP-404, 2024-Ohio-2275, ¶ 13. Courts have defined the term "[s]ubstantial compliance" to mean that "under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." *Marcum* at ¶ 6. *See also State v. Ingram*, 10th Dist. No. 01AP-854 (Mar. 5, 2002) ("A trial court substantially complies with the rule when under the totality of the

circumstances a defendant subjectively understands the implications of his plea and the rights he is waiving.").

{¶ 11} In the present case, a review of the transcript of the plea proceedings indicates the prosecutor noted, at the start of the hearing, it was the state's understanding appellant would be entering a guilty plea to 3 counts in case No. 17CR-4124 and 2 counts in case No. 18CR-1232, and that the "joint" recommendation was "the State will argue for a prison sentence not to exceed four years and the defendant will argue for community control." (Feb. 4, 2020 Tr. at 3.) The prosecutor further noted the 30 remaining counts in case No. 17CR-4124, as well as the 30 remaining counts in case No. 18CR-1232, "will be nolled." (Feb. 4, 2020 Tr. at 3.) Defense counsel acknowledged the prosecutor's representation reflected his understanding of the joint recommendation.

{¶ 12} The trial court then engaged in a colloquy with appellant, during which appellant acknowledged he discussed all pending charges with his attorney, Dodgion, and that he was satisfied with his attorney's representation. When asked by the court whether he understood that his guilty plea constituted a "complete admission" of guilt, appellant responded: "Yes, I understand that they're going to drop fifty-five charges or sixty charges in return for me admitting to five charges." (Feb. 4, 2020 Tr. at 6.) The trial court informed appellant of the maximum penalty for each of the charges, and discussed with him the constitutional and non-constitutional rights he was giving up by entering a guilty plea.

{¶ 13} The prosecutor then gave the following recitation of facts in case No. 17CR-4124 regarding Counts 5, 13, and 20. On Count 5, the prosecutor related that appellant, on September 12, 2012, "purchased option agreements" involving the accounts of two individuals (H.H. and J.H.) "without a license." (Feb. 4, 2020 Tr. at 20.) As to Count 13, appellant, "again without a license, purchased and sold securities from an * * * investment account" owned by an individual (J.P.). (Feb. 4, 2020 Tr. at 20-21.) On Count 20, appellant, on August 8, 2012, "purchased and sold securities options, equity options in an account that was owned by" another individual (H.E.). (Feb. 4, 2020 Tr. at 21.) The prosecutor stated that "[t]he fraud involved in Count 20 involved [appellant's] failure to disclose that he did not have a license and additionally that he had caused a significant amount of losses in other individuals' accounts without disclosing that to [H.E.]." (Feb. 4, 2020 Tr. at 21.) The prosecutor further represented that appellant set up an account for

this individual "by falsifying information about her degree of risk and about her expertise in various forms of securities, including options trading." (Feb. 4, 2020 Tr. at 21-22.)

{¶ 14} The prosecutor then gave a recitation of facts in case No. 18CR-1232. As to Count 10, charging appellant with unlawful securities practice, the prosecutor stated that, on November 1, 2013, appellant "sold securities from an account owned by [B.D.], and at this time period [appellant] did not have a license." (Feb. 4, 2020 Tr. at 22.) With respect to Count 32, telecommunications fraud, the prosecutor stated the offense "covers a time period from June 26th, 2012 to October 17th, 2017." (Feb. 4, 2020 Tr. at 22.) The prosecutor related that "[d]uring this time period [appellant] utilized the internet, primarily the websites for two different brokerage firms, Fidelity and Interactive Brokers, and set up accounts for various victims, which include [B.D.], [D.E.], [H.E.], [A.B.], [A.F.], [H.H.], [R.H.], [Y.M.], [J.P.], [R.S.] and [Z.S.]." (Feb. 4, 2020 Tr. at 22.) According to the prosecutor, appellant set up these various accounts over the internet by "falsifying the degree of risk" these individuals "were willing to undertake, indicating that they were high risk investors, when in fact that was not the case; and then also falsifying information about the experience and expertise that each of the stated victims had with regards to different types of investing that was false." (Feb. 4, 2020 Tr. at 23.) Appellant "continued to utilize the internet by going onto the brokerage firms to execute different trades through the time period as stated." (Feb. 4, 2020 Tr. at 23.)

{¶ 15} After the above recitation of facts, the trial court inquired of counsel for appellant whether there were "any additions or exceptions to the facts," and defense counsel responded: "Not for purposes of the plea, Your Honor." (Feb. 4, 2020 Tr. at 24.) The trial court then engaged in the following colloquy with appellant:

> THE COURT: Okay. Mr. Hall, we'll take them one at a time then, starting with the 2017CR-4124.
>
> As to Count 5, unlawful securities practice, a third degree felony, how do you plead to that charge?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: As to Count 13, unlawful securities practices, a fourth degree felony, how do you plead?
>
> THE DEFENDANT: Guilty.

THE COURT: And as to Count 20, unlawful securities practices, a second degree felony, how do you plead?

THE DEFENDANT: I'm just now kind of hearing the facts, but I'll plead guilty.

THE COURT: So as to 18CR-1232, Count 10, unlawful securities practices, a third degree felony, how do you plead to that charge?

THE DEFENDANT: Guilty.

THE COURT: And finally, as to Count 32, tele-communications fraud, a third degree felony, how do you plead on that charge?

THE DEFENDANT: I don't really agree with the facts, but I'll plead guilty for purposes of the plea.

THE COURT: Okay. When he read over the statements of facts I asked if there were any additions or exceptions for the purposes of the plea. At sentencing I expect to hear more, obviously, about the background of all of this.

But I just want to make sure that what you're doing today is knowingly, voluntarily, and intelligently taking place.

Is that correct?

THE DEFENDANT: I'm pleading guilty, yes.

* * *

THE COURT: But I just want to make sure what you're telling me is you don't want to have a trial anymore, send that jury home, and let's do this plea today. Is that right?

THE DEFENDANT: Send the jury home, yes.

(Feb. 4, 2020 Tr. at 24-26.)

{¶ 16} In considering the "totality of the circumstances," the record supports a finding appellant subjectively understood the nature of the offenses to which he pled guilty, and that the plea was knowingly and voluntarily made. During the plea hearing, appellant acknowledged he discussed the pending charges with his attorney, and that he reviewed the

guilty plea forms with counsel prior to signing them; the signed plea forms stated appellant "reviewed the facts and law of my case with my counsel." (Feb. 4, 2020 Guilty Plea.) Appellant agreed he was satisfied with his counsel and that he had not been pressured to change his plea to guilty. Further, the trial court discussed the joint recommendation with appellant, and appellant acknowledged he was admitting to having committed the five offenses and assured the court he wanted to plead guilty.

{¶ 17} While appellant stated he did not "really agree" with some of the facts, the trial court properly made further inquiry of appellant to "make sure" his plea was knowing and voluntary, and that he still wanted to plead guilty. (Feb. 4, 2020 Tr. at 25.) In response, appellant made clear he still desired to enter guilty pleas, and the record reflects the trial court substantially complied with Crim.R. 11(C)'s requirements that appellant understood the nature of the charges and the penalties he faced by entering the plea. *See*, *e.g.*, *State v. Collins*, 3d Dist. No. 4-14-14, 2015-Ohio-1886, ¶ 19-20 (Collins' assertion "that he 'dispute[d] the facts as recited' by the State" did not support conclusion pleas were not voluntarily and knowingly entered as "nowhere in trial transcript is there any indication that Collins did not want to the enter the pleas" or that he "entered his pleas under duress or without the understanding of the nature of the charges or the constitutional protections he was waiving"); *State v. Simmons*, 10th Dist. No. 97APA10-1310 (Aug. 4, 1998) (the fact Simmons "may have disagreed" with the prosecution's recitation of facts did not, under totality of circumstances, mean he did not understand the charge to which he entered guilty plea or that the court failed to comply with Crim.R. 11(C)'s requirement that he understand the nature of the charge); *State v. Harris*, 12th Dist. No. CA2017-03-026, 2017-Ohio-8130, ¶ 27 (finding trial court complied with Crim.R. 11(C) and that Harris, who initially indicated she did not agree with state's recitation of facts but, after further inquiry by the court, "stated her desire to move forward with guilty plea," entered knowingly, intelligently, and voluntarily).

{¶ 18} As to appellant's contentions he believed he would be allowed to withdraw his plea later, and that he believed the court was still going to rule on his speedy trial motion, the record fails to indicate appellant raised those concerns during the plea proceedings when he had the opportunity. Accordingly, based on the record presented, the trial court

complied with the requirements of Crim.R. 11(C) and did not err in accepting appellant's plea as such record establishes appellant made a knowing, voluntary, and intelligent plea.

{¶ 19} Appellant's seventh assignment of error is not well-taken and is overruled.

{¶ 20} We next address appellant's first and third assignments of error, which are interrelated. Under his first assignment of error, appellant asserts the state violated his right to a speedy trial in case No. 18CR-1232 under statutory (R.C. 2945.71) and federal and state constitutions; under the third assignment of error, he contends the state violated his speedy trial rights in case No. 17CR-4124 under federal and state constitutions.

{¶ 21} In his pro se brief, appellant argues "[s]ince over 690 days had passed in this case" (i.e., No. 18CR-1232) before he was brought to trial on February 3, 2020, "it is clear that [his] right to a speedy trial had been violated." (Appellant's Brief at 7.) Appellant notes he filed a motion to dismiss for speedy trial violations on February 2, 2020, prior to the trial date, February 4, 2020. Appellant maintains his motion should have been addressed before trial and contends the trial court erred in not holding a hearing and granting his motion. According to appellant, if the trial court "had held a hearing, the motion would have been granted" and he "would have been discharged and not erroneously convinced to enter a plea." (Appellant's Brief at 12-13.)

{¶ 22} In response, the state argues appellant chose to enter a guilty plea, thereby waiving his speedy trial claims. Alternatively, the state contends appellant has failed to show a speedy trial violation based on the record. Upon review, we agree.

{¶ 23} At the outset, and as noted by the state, appellant only raised a speedy trial claim in case No. 18CR-1232. Specifically, on February 2, 2020, one day before voir dire began, appellant filed a pro se motion to discharge/dismiss the indictment in that case based on alleged speedy trial violations. Two days later, on February 4, 2020, following selection of a jury, appellant entered his guilty plea in case No. 18CR-1232.

{¶ 24} A criminal defendant has the right to a speedy trial "as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution." *State v. Kelley*, 57 Ohio St.3d 127, 130 (1991). Ohio's statutory right to a speedy trial is set forth under the provisions of R.C. 2945.71 to 2945.73, which "designate specific time requirements for the state to bring an accused to trial." *State v. Dennis*, 10th Dist. No. 05AP-1290, 2006-Ohio-5777, ¶ 22.

{¶ 25} Under Ohio law, however, "[a] plea of guilty waives a defendant's right to challenge his or her conviction on statutory speedy trial grounds." *Kelley* at paragraph one of the syllabus. *See also State v. Jones*, 10th Dist. No. 11AP-1123, 2012-Ohio-3767, ¶ 18 ("Because ' "a guilty plea waives a defendant's right to trial, it also necessarily waives any claim that the defendant was denied a speedy trial." ' "). (Citations omitted.) In this respect, " '[e]ven where a criminal defendant filed a motion to dismiss on statutory speedy trial grounds in the trial court, the defendant waives the right to raise that issue on appeal by entering a plea of guilty to the charges against him.' " *State v. Frazier*, 9th Dist. No. 30568, 2023-Ohio-4222, ¶ 7, quoting *State v. Harris*, 9th Dist. No. 28229, 2017-Ohio-1150, ¶ 5, citing *State v. Dyson*, 9th Dist. No. 09CA0055, 2010-Ohio-6423, ¶ 8-9.

{¶ 26} In the present case, appellant's guilty plea "waived any claim [he] may have had regarding a speedy trial violation." *Jones* at ¶ 18. *See also State v. Johnson*, 10th Dist. No. 16AP-134, 2016-Ohio-5904, ¶ 18 (because Johnson entered guilty plea, "he waived his right to challenge his conviction on speedy trial grounds").

{¶ 27} However, even if appellant had not entered a guilty plea, we would agree with the state the record fails to show a violation of statutory speedy trial rights. Under R.C. 2945.71(C)(2), a defendant against whom a felony charge is pending "shall be brought to trial within two hundred seventy days after the person's arrest." The time in which a defendant must be brought to trial "may be extended under certain exceptions enumerated in R.C. 2945.72." *State v. Hopings*, 6th Dist. No. L-20-1075, 2022-Ohio-1532, ¶ 57. In general, " '[t]he proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72.' " *State v. Vrapi*, 10th Dist. No. 11AP-700, 2012-Ohio-1018, ¶ 6, quoting *In re F.S.*, 10th Dist. No. 11AP-244, 2011-Ohio-6135, ¶ 7, citing *State v. Gonzalez*, 10th Dist. No. 08AP-716, 2009-Ohio-3236, ¶ 9.

{¶ 28} The record in case No. 17CR-4124 indicates appellant was served with the indictment or warrant on July 31, 2017. On September 12, 2017, appellant made a request for discovery. Under Ohio law, "[a] defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery, or for a reasonable time, whichever is sooner." *State v. Burks*, 8th Dist. No. 106639, 2018-Ohio-4777, ¶ 36. As noted by the state, a total of 43 days elapsed from the time of indictment until the discovery request, and a

further period of 17 days passed before the first trial date of October 20, 2017. Thereafter, the trial court granted a total of 12 continuances on appellant's own motion or on the joint motion of the parties from October 20, 2017 to February 3, 2020. Each continuance entry contained a waiver of speedy trial rights signed by appellant and/or his counsel. The continuances at issue "toll the speedy trial time limits." *State v. Quinnie*, 10th Dist. No. 12AP-484, 2013-Ohio-1208, ¶ 8 (noting that continuances "on accused's own motion," as well as continuances "granted upon joint motions" and those "granted on accused's own motion or by joint motions" toll the speedy trial time limits). (Citations omitted.) We note appellant's argument under his first assignment of error fails to address the multiple continuance entries and/or tolling events attributable to motions he filed.

{¶ 29} In case No. 18CR-1232, appellant was indicted on March 13, 2018. As observed by the state, no tolling events occurred prior to May 8, 2018, when the first trial date was continued (to June 27, 2018) on motion of appellant, resulting in the expiration of 55 days of speedy trial time. Thereafter, numerous continuances and several defense motions were filed, and we agree with the state's contention that those events tolled the time until the start of trial on February 3, 2020. The record therefore supports the state's argument that a total of only 60 days of speedy trial time expired in case No. 17CR-4124, and a total of 55 days expired in case No. 18CR-1232. Accordingly, even if appellant had not waived the speedy trial issue, the record indicates no violation of appellant's statutory speedy trial rights.

{¶ 30} In addition to his statutory claim, appellant contends the state violated his right to a speedy trial under state and federal constitutional protections. A reviewing court analyzes a constitutional right to a speedy trial "separately from a statutory speedy trial right." *Frazier* at ¶ 6, citing *State v. Williams*, 9th Dist. No. 2273-M (Apr. 20, 1994).

{¶ 31} In "analyzing a constitutional speedy-trial claim, we undertake a two-step inquiry" in which we first "consider whether the defendant has established that the delay was presumptively prejudicial." *State v. Williams*, 10th Dist. No. 18AP-891, 2023-Ohio-1002, ¶ 32, citing *State v. Smith*, 10th Dist. No. 19AP-170, 2021-Ohio-1936, ¶ 38. Second, in circumstances in which "a presumptively prejudicial delay exists, we apply a four-factor balancing test examining: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's timely assertion of his speedy-trial right, and (4) the resulting prejudice to the

defendant from the delay." *Id.*, citing *State v. Kadunc*, 10th Dist. No. 15AP-920, 2016-Ohio-4637, ¶ 19, citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In general, " 'delay is presumptively prejudicial as it approaches one year.' " *Id.*, quoting *Smith* at ¶ 38.

{¶ 32} Assuming, arguendo, appellant has established the delay was presumptively prejudicial, we consider the second part of the two-step inquiry. With respect to the first factor, the length of delay was slightly more than two years. Courts have recognized that a tolerable amount of delay " 'is necessarily dependent upon the peculiar circumstances of the case,' " and "tolerable delay increases with the complexity and seriousness of the case." *State v. Boyd*, 7th Dist. No. 23 MA 0012, 2023-Ohio-4725, ¶ 102, quoting *Barker*, 407 U.S. at 530-31.

{¶ 33} The record here reflects the case involved allegations of a financial securities scheme involving multiple counts (33 counts in case No. 17CR-4124 and 32 counts in case No. 18CR-1232), a number of alleged victims (6 alleged victims in case No. 17CR-4124 and 6 additional alleged victims in case No. 18CR-1232), and dates of alleged criminal activity ranging from June 2012 through October 2017. The record also reflects the parties engaged in extensive pre-trial discovery, including a significant amount of evidence from data files and financial records from brokerage firms. During a pre-trial hearing in which the trial court granted appellant's former counsel's motion to withdraw, the trial court informed newly appointed counsel that "this is a very complex case" and "[t]here is a lot of discovery." (Nov. 14, 2018 Tr. at 6.)

{¶ 34} The second factor, the reason for the delay, "is concerned with whether the government or the defendant is more to blame for the delay." *Quinnie* at ¶ 14. The record in this case indicates the actions of appellant contributed to much of the delay, as the matter was continued at defense counsel's request at various times, as well as upon motion of both parties; as previously discussed, waivers were signed by appellant and/or his counsel with respect to each of those continuances. As also discussed above, appellant filed a number of pre-trial motions, including a demand for discovery (filed September 12, 2017), motion for competency evaluation (filed April 26, 2018), motion for bond reconsideration (filed June 4, 2018), and motions to dismiss (both motions filed January 20, 2020). Based on the record presented, the second factor does not weigh in appellant's favor. *See, e.g.*, *Quinnie* at ¶ 14 (second factor under *Barker*, 407 U.S. at 530, did not weigh in defendant's

favor where large portion of delay occurred as a result of continuances either requested by appellant's trial counsel or by agreement of parties); *State v. Bias*, 10th Dist. No. 21AP-329, 2022-Ohio-4643, ¶ 152 ("continuance entries alone defeat any constitutional speedy-trial claim"); *State v. Williams*, 8th Dist. No. 108275, 2020-Ohio-269, ¶ 50 (continuance entries and motions filed by defendant weigh in favor of state under second factor). We further observe, contrary to appellant's contention, the record does not indicate any "deliberate attempt" by the state to delay the trial. *Barker*, 407 U.S. at 531.

{¶ 35} In general, " '[t]he third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right.' " *State v. Glanton*, 6th Dist. No. WD-18-091, 2020-Ohio-834, ¶ 34, quoting *State v. Rice*, 1st Dist. No. C-150191, 2015-Oho-5481, ¶ 27, citing *Barker* at 529. In this respect, a "[d]efendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim." *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir.1999). In *State v. Scott*, 10th Dist. No. 09AP-611, 2009-Ohio-6785, ¶ 27, this court found that a defendant's delay of over six months in filing his motion to dismiss after the indictment weighed against his constitutional argument. *See also State v. Walker*, 10th Dist. No. 06AP-810, 2007-Ohio-4666, ¶ 31 (Walker's two-month delay weighed "against [his] claim of a serious deprivation of his right to a speedy trial.").

{¶ 36} In the present case, as noted by the state, appellant filed his motion to dismiss for speedy trial violation one day before the start of trial, and approximately 23 months after the indictment in case No. 18CR-1232. Thus, the third factor weighs against appellant.

{¶ 37} The fourth inquiry requires a court to determine whether a defendant suffered prejudice as a result of the delay. In evaluating prejudice "in this context, we consider the specific interests the right to a speedy trial was designed to protect: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's defense will be impaired by dimming memories and loss of exculpatory evidence." *Quinnie* at ¶ 16.

{¶ 38} Appellant contends he suffered prejudice "in that at least four witnesses moved away," and "[m]any records were not easily obtained and/or lost and memories were compromised." (Appellant's Brief at 27-28.) Appellant also argues the state unduly delayed indicting him, preventing him from being able to cross-examine a witness from the department of securities who passed away.

**{¶ 39}** In response, the state argues appellant's general assertion that witnesses may have moved away or that memories may have been compromised is insufficient to establish prejudice, especially in light of the fact the evidence in both cases was based primarily on governmental records, financial documents, and victim statements. The state further argues that appellant's claim of pre-indictment delay is not properly before this court, as he failed to raise such claim before the trial court or as an assignment of error on appeal.

**{¶ 40}** In general, courts addressing the prejudice factor consider whether a defendant has made a showing of "particularized trial prejudice." *Walker* at ¶ 34. In this respect, a defendant's "broad statement that any exculpatory evidence may have ceased to exist due to the delay is insufficient to demonstrate actual prejudice." *State v. Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, ¶ 33.

**{¶ 41}** In the instant case, appellant has not identified what specific records he could not obtain or which witnesses he might be unable to contact as a result of the delay. Further, despite a generalized claim that memories may have been lost, appellant "does not point to any particular witness who has claimed a loss of memory." *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 25. We also agree with the state that appellant's claim of pre-indictment delay was not raised before the trial court. Further, appellant "disregards the fact that he pled guilty in this case," resulting in "a waiver of any alleged due process violation arising from preindictment delay." *State v. Shivers*, 8th Dist. No. 105621, 2018-Ohio-99, ¶ 11, citing *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, citing *State v. Taylor*, 8th Dist. No. 105322, 2017-Ohio-8066, ¶ 12. Finally, even accepting the issue was properly before us, in light of the limited record on this issue, and given our previous discussion as to the nature of the case and the complexity of the investigation, appellant cannot show plain error based on a general claim of prejudice from pre-indictment delay. *See, e.g., State v. Kucsma*, 8th Dist. No. 39905 (Jan. 31, 1980) (no due process violation where pre-indictment delay "in part attributable to the complexity of the investigation of * * * white-collar crime" case). The fourth factor, therefore, weighs against appellant's generalized claim of prejudice. Having reviewed all four factors, appellant has failed to demonstrate that the delay in this case violated his constitutional right to a speedy trial.

{¶ 42}   Accordingly, because neither appellant's statutory or constitutional right to a speedy trial was violated, appellant's first and third assignments of error are not well-taken and are overruled.

{¶ 43}   Appellant's second and sixth assignments of error, which both raise claims of ineffective assistance of counsel, will be addressed together.   Under his second assignment of error, appellant argues his counsel was ineffective in encouraging him to enter a guilty plea after his right to a speedy trial had been violated.   According to appellant, because he had a timely and viable motion to discharge pending, it was ineffective assistance for his counsel to advise him to enter a guilty plea.

{¶ 44}   Under his sixth assignment of error, appellant contends he was denied effective assistance of counsel where defense counsel: (1) failed to reply to the state's "inaccurate" facts in its memorandum contra appellant's motion to withdraw plea, (2) failed to go over the indictment with his client, (3) only met with his client three times, (4) failed to take steps to obtain exculpatory evidence, (5) failed to object or move to exclude "dumped" discovery materials just prior to trial, and (6) was insufficient in his preparation for trial.  (Appellant's Brief at 47, 49.)

{¶ 45}   To prevail on a claim of ineffective assistance of counsel, a defendant "must satisfy a two-prong test." *State v. Stewart*, 10th Dist. No. 18AP-496, 2020-Ohio-1245, ¶ 11. First, a defendant "must demonstrate that his trial counsel's performance was deficient." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989).   Second, a defendant "must establish that the deficient performance prejudiced his defense."  *Id.*, citing *Strickland* at 687; *Bradley* at 141-42. When a criminal defendant alleges ineffective assistance of counsel "arising from the plea process, the defendant must meet the two-prong test set out in *Strickland*."  *State v. Romero*, 156 Ohio St.3d 468,  2019-Ohio-1839, ¶ 14.  With respect to the second prong, a defendant "can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "  *Id.*, quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

{¶ 46} At the outset, as noted by the state, appellant's claims under these assignments of error relate only to case No. 17CR-4124, as appellant elected to represent himself in case No. 18CR-1232.  We first address appellant's second assignment of error, in

which he contends his counsel was ineffective in advising him to enter a guilty plea. According to appellant, because he had a timely and viable motion to discharge pending, it was ineffective assistance for his counsel to advise him to enter the plea. Appellant's argument is dependent on the claim raised under his first assignment of error, i.e., that the state violated his right to a speedy trial.

{¶ 47} We note certain arguments by appellant under his second assignment of error are not part of the record on appeal, including appellant's contention that his defense counsel advised him to enter a guilty plea based on a representation that "the motion to discharge would be heard by the court at a later date." (Appellant's Brief at 18.) To the extent the appeal record speaks to the issue of defense counsel's possible advice to appellant regarding the speedy trial issue, the record reflects, during a pre-trial hearing one day prior to the trial date, counsel represented to the trial court: "[Appellant] and I have discussed this ad nauseam. I disagree with the premise on the speedy trial. That's probably all I should say." (Feb. 3, 2020 Tr. at 24.)

{¶ 48} We have previously found, in our disposition of the first and third assignments of error, no violation of appellant's statutory or constitutional speedy trial rights. Accordingly, appellant's claim he was prejudiced by his counsel's ineffectiveness because he had "a meritorious speedy trial motion pending and therefore would have had all charges dismissed" is without merit, nor can he show a reasonable probability that, but for counsel's deficient performance, he would not have entered his plea. (Appellant's Brief at 23.) *See State v. Geraci*, 8th Dist. No. 101946, 2015-Ohio-2699, ¶ 17 (rejecting Geraci's claim he would not have entered guilty plea were it not for counsel's statement regarding speedy trial rights where "record reflects * * * there was no violation of Geraci's speedy trial rights and there is no evidence that [appellant's] guilty pleas were otherwise not knowingly and voluntarily made"); *State v. Watkins*, 3d Dist. No. 1-18-32, 2018-Ohio-5055, ¶ 21 ("since Watkins's speedy-trial argument fails," his claim that, but for counsel's deficient performance, he would not have pled guilty "is without merit").

{¶ 49} We next address appellant's claims of ineffective assistance of counsel under his sixth assignment of error. Appellant first contends his counsel was deficient in failing to reply to the state's "inaccurate facts" in its memorandum contra appellant's motion to withdraw guilty pleas. (Appellant's Brief at 47.)

**{¶ 50}** Appellant challenges statements in the state's memorandum contra filed July 27, 2020. In that memorandum, the state cited in general case law relative to the standard of review under Crim.R. 32.1 for granting or denying a presentence motion to withdraw guilty plea. The state further argued that, in applying the relevant factors in considering such motion, the motion to withdraw should be overruled.

**{¶ 51}** As noted by the state, appellant does not "identify the alleged 'inaccurate facts' in the State's response." (State's Brief at 26.) A review of the state's memorandum contra provides no support for appellant's claim his counsel was deficient in failing to challenge purported inaccuracies (nor, we note, does appellant suggest the trial court relied on any factual inaccuracies in ruling on the motion to withdraw).

**{¶ 52}** Appellant next contends his counsel was deficient in failing to review the indictment with him, failing to investigate the case or to discuss with him the bill of particulars or discovery matters, and in failing to spend sufficient time with him. To the extent these contentions touch on matters that are part of the record on appeal, the record does not support appellant's claim of deficient performance.

**{¶ 53}** During the hearing on the motion to withdraw guilty plea, appellant acknowledged that his counsel "says he's put a lot of time in this, and, yes, he has, but we met -- we had three office meetings." (Aug. 4, 2020 Tr. at 30.) Counsel for appellant represented at that hearing he had spent between "500 to 1,000 hours" on the case, going through discovery and "knowing the case inside and out." (Aug. 4, 2020 Tr. at 10.)

**{¶ 54}** The fact that defense counsel may have met only three times with appellant prior to the plea agreement does not by itself show deficient performance. *See, e.g., State v. Brown*, 3d Dist. No. 14-08-11, 2008-Ohio-4649, ¶ 31 (The "amount of time" trial counsel spends with his client "does not indicate, by itself, whether trial counsel was ineffective."). Federal courts similarly recognize "there is no constitutional minimum number of meetings between attorneys and their clients to satisfy competency." *Pearson v. Warden of Evans Corr. Inst.*, No. 5:23-2693-CMC-KDW (D.S.C., July 30, 2024); *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir.1980) ("it is not enough to merely show that counsel only met with Easter twice before trial as long as counsel devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case").

{¶ 55} In addition to appellant's acknowledgement that his counsel spent considerable time investigating the case, the record further indicates, during the change of plea hearing, appellant acknowledged he was satisfied with his counsel's representation. Based on the record presented, appellant has failed to show how the above claims "rise to the level of deficient performance." *State v. Gill*, 8th Dist. No. 96150, 2011-Ohio-5174, ¶ 8 (rejecting Gill's claim his trial counsel was ineffective because he only met with him three times where record failed to support appellant's "general claim" his attorney failed to investigate case and where appellant "relayed to the court during its Crim.R. 11 plea colloquy * * * he was satisfied with his attorney's representation"). *See also State v. Collins*, 6th Dist. No. L-23-1080, 2024-Ohio-869, ¶ 41 (if Collins "felt that he needed time to review discovery responses with his attorney, he could have said so at the plea hearing or he could have declined to accept the plea agreement" but, instead, "he told the court that he was satisfied with his attorney's performance and raised no concerns").

{¶ 56} Appellant next contends the state offered defense counsel exculpatory evidence which counsel failed to take steps to obtain. In support, appellant cites to a pre-trial hearing on April 18, 2019, during which the state indicated computers were available for inspection. According to appellant, his counsel "said in open court that he would get a hard drive of the evidence from the state saying 'I can get something bigger' and failed to follow-up by never obtaining the favorable evidence or obtaining a hard drive of the evidence." (Appellant's Brief at 49.)

{¶ 57} In response, the state argues the "exculpatory" evidence referenced by appellant involved his own computers that were seized during the criminal investigation. The state maintains appellant "never identified any evidence that would be exculpatory or even relevant to his defense." (State's Brief at 29.) Further, the state argues, even after the computers at issue were returned to appellant in May 2020, he still failed to provide the court with any evidence to support his claim.

{¶ 58} The record indicates, during the motion to withdraw guilty plea, appellant argued the state "fought every which way * * * to not give the computers back." (Aug. 4, 2020 Tr. at 32.) Appellant stated his counsel "said, you know: This is basic. You need to give him the physical evidence or give him access." (Aug. 4, 2020 Tr. at 33.) Appellant, while acknowledging "they gave me the computers at the end of May," expressed his

dissatisfaction with the state's earlier offer to provide a "mirror image" of the files on the computer. (Aug. 4, 2020 Tr. at 33, 35.)

{¶ 59} During the hearing, the state responded by stating appellant "had his actual computer since May of 2020," and "what he's talking about are his records." (Aug. 4, 2020 Tr. at 42.) The prosecutor further argued: "[Appellant] knows what's in those records. He's had his computer, and he still is not able to express to the Court any exculpatory evidence that was on those computers." (Aug. 4, 2020 Tr. at 42.)

{¶ 60} During an earlier pre-trial hearing, on January 7, 2020, defense counsel informed the court appellant had hired a computer expert (in case No. 18CR-1232) and that the state had "offered to give us a mirror image of the hard drive if we provided a 2 terabyte hard drive." (Jan. 7, 2020 Tr. at 4.) Defense counsel indicated his client "would not share with me specific reasons as to what he is looking for on those hard drives." (Jan. 7, 2020 Tr. at 5.) Defense counsel informed the court he told appellant that "I need specifics on exactly what you intend or hope to find so that I can make a good faith basis for any motions to the Court." (Jan. 7, 2020 Tr. at 12.) Counsel further represented: "I was not provided with any specifics whatsoever. So I told him, if you want it, you need to file it under your indictment, because you have not given me what I consider to be a good faith basis for moving the Court for return of property." (Jan. 7, 2020 Tr. at 12.)

{¶ 61} Thus, the record indicates defense counsel evaluated appellant's request, inquired of his client about the nature of the evidence and the need for it, and determined there was not a good faith basis to file a motion. In general, an attorney has an obligation "that any motion the attorney files have a good-faith basis in both law and fact." *State v. Hough*, 169 Oho St.3d 769, 2022-Ohio-4436, ¶ 25. Further, a trial counsel's "failure to file a futile or frivolous motion ' "cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial." ' " *State v. Smith*, 4th Dist. No. 20CA3934, 2022-Ohio-371, ¶ 83, quoting *State v. Waters*, 4th Dist. No. 13CA693, 2014-Ohio-3109, ¶ 12, quoting *State v. Witherspoon*, 8th Dist. No. 94475, 2011-Ohio-704, ¶ 33. On the record presented, appellant cannot demonstrate deficient performance by counsel in failing to take steps to obtain the alleged (and otherwise unidentified/unexplained) "exculpatory" evidence at issue, nor has appellant made any showing that, but for counsel's claimed error, the outcome of the proceedings would have been different.

{¶ 62} Appellant further contends his counsel was ineffective in failing to object to or move to exclude "dumped" discovery materials just prior to trial.  In response, the state argues that it received additional records from a brokerage firm (Interactive Brokers) in the weeks leading up to trial, and that it complied with discovery rules by turning over those records.  The state maintains that, because it had an ongoing duty to supplement discovery, defense counsel had no basis for objecting to those materials.

{¶ 63} Appellant raised his claim of "dumped" discovery materials during the August 4, 2020 hearing on his motion to withdraw guilty plea, stating to the court that supplemental discovery "was dumped two weeks before trial." (Aug. 4, 2020 Tr. at 14.)  In response, the prosecutor informed the court: "There was some evidence that came forward about two weeks before the case." (Aug. 4, 2020 Tr. at 37.)  The prosecutor represented to the court that "[w]e did supply it to [defense counsel] and to [appellant]," and they were provided "everything we have." (Aug. 4, 2020 Tr. at 37.)  The prosecutor further stated: "We realized late there [were] some Interactive Brokers records that we were not anticipating using at trial because of the lateness, but we had it, so we turned it over." (Aug. 4, 2020 Tr. at 37.)

{¶ 64} Here, the record reflects the state notified defense and appellant of the supplemental discovery, turned over all materials in its possession, and represented to the court it did not plan to introduce those records at trial.  While appellant makes a general argument that "[h]is counsel did nothing to exclude evidence" the record does not reflect the state intentionally withheld evidence so as to support an objection on that basis. (Appellant's Brief at 49.)  Further, the record on appeal does not suggest defense needed additional time to review the supplemental discovery at issue, and appellant has not demonstrated how his counsel's failure to object to these materials affected the outcome of the proceedings.

{¶ 65} Finally, appellant contends generally that his counsel's trial preparation was "wholly insufficient," arguing that counsel failed to file motions, contact alleged victims, or subpoena witnesses or records. (Appellant's Brief at 50.)

{¶ 66} The record in this case belies appellant's contention that his counsel failed to file motions on his behalf.  Following his appointment in November 2018, counsel for appellant filed various motions, including motion for bond (January 22, 2019), motion for

investigative fees (January 25, 2019), and motion to withdraw guilty plea (July 24, 2020). Counsel also filed a memorandum in opposition to the state's motion for joinder (February 10, 2019), and a sentencing memorandum (August 17, 2020).

{¶ 67} As noted by the state, to the extent appellant claims his counsel failed to investigate or subpoena witnesses, such claim was not developed before the trial court. In general, "*Strickland* requires defense counsel 'to make reasonable investigations' before trial." *State v. Thompson*, 141 Oho St.3d 254, 2014-Ohio-4751, ¶ 247, quoting *Strickland* at 691. However, where the record "does not indicate the extent of counsel's pretrial investigation," a reviewing court "will not 'infer a defense failure to investigate from a silent record.' " *Id.*, quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 244. Based on the foregoing, appellant has failed to demonstrate his counsel's conduct denied him effective assistance of counsel.

{¶ 68} Accordingly, appellant's second and sixth assignments of error are not well-taken and are overruled.

{¶ 69} Under his fourth assignment of error, appellant asserts the trial court erred in denying his motion to withdraw his guilty pleas. Appellant contends that when considering the applicable factors in determining whether to grant a motion to withdraw, such factors weigh in favor of granting his motion.

{¶ 70} Crim.R. 32.1 governs the withdrawal of a guilty plea and states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A motion to withdraw a guilty plea prior to sentencing " 'should be freely and liberally granted.' " *State v. Zimmerman*, 10th Dist. No. 09AP-866, 2010-Ohio-4087, ¶ 11, quoting *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, such right to withdraw a plea "is not absolute" and, "[w]hen presented with such a motion, a 'trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.' " *Id.*, quoting *Xie* at 527.

{¶ 71} This court reviews a trial court's ruling on a presentence motion to withdraw guilty plea under "an abuse of discretion standard of review." *Id.*, citing *Xie* at paragraph two of the syllabus. In the absence of an abuse of discretion, "a trial court's decision must

be affirmed." *Id.*, citing *Xie* at 527. Further, "[a]ppellate review of a decision on a presentence motion to withdraw a guilty plea necessarily depends upon the particular facts and circumstances presented." *Id.* at ¶ 13, citing *State v. Walton*, 2 Ohio App.3d 117, 119 (10th Dist.1981). Accordingly, "[i]f an appellate court finds that the trial court unjustly or unfairly denied a defendant's presentence motion to withdraw a guilty plea, then a reversal is warranted." *Id.*, citing *Xie* at 526, quoting *Barker v. United States*, 579 F.2d 1219 (10th Cir.1978).

{¶ 72} In *State v. West*, 10th Dist. No. 11AP-548, 2012-Ohio-2078, ¶ 16, this court noted that, in reviewing a trial court's decision on a presentence motion to withdraw a guilty plea, "we must weigh several nonexhaustive factors." Specifically, those factors include:

> (1) whether the prosecution would be prejudiced if the plea were withdrawn; (2) whether the defendant was represented by highly competent counsel; (3) whether the defendant received a full Crim.R. 11 hearing prior to entering the plea; (4) whether there was a full hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion to withdraw; (6) whether the motion was filed within a reasonable time period; (7) whether the motion put forth specific reasons for the withdrawal; (8) whether the defendant understood the nature of the charges and the possible penalties; and (9) whether the defendant had a complete defense to the crime or perhaps was not guilty.

*Id.*

{¶ 73} Further, " '[c]onsideration of the factors is a balancing test, and no one factor is conclusive.' " *Id.*, quoting *Zimmerman* at ¶ 13, citing *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995).

{¶ 74} In the present case, appellant filed motions to withdraw guilty plea in both cases, and the trial court conducted a hearing on the motions on August 4, 2020. The record indicates the trial court considered the above factors in ultimately denying appellant's motions to withdraw by decision and entry filed August 5, 2020.

{¶ 75} In considering the first factor, the trial court found "the State and its witnesses would be prejudiced if [appellant's] motion were to be granted." (Aug. 5, 2020 Decision & Entry at 2.) The record indicates, during the hearing on the motion to withdraw, the prosecutor represented to the court that the state had "many witnesses lined up" for the

case, including a number of out-of-state witnesses, as well as an expert "we had flying in." (Aug. 4, 2020 Tr. at 41.)

**{¶ 76}** The trial court addressed the issue of prejudice during the hearing, noting the state had prepared for what was "anticipated" to be a trial lasting "anywhere from three to four weeks long." (Aug. 4, 2020 Tr. at 5.) The court also observed: "The State had a number of witnesses lined up. Some of them were going to appear via Zoom. * * * I think some of them had flights lined up." (Aug. 4, 2020 Tr. at 9.) The court further noted it had ordered "a special venire panel" involving between 75-90 jurors, and that the parties had conducted "a day and a half * * * of voir dire of this special panel" and selected "a very good jury" shortly before appellant chose to enter his guilty pleas. (Aug. 4, 2020 Tr. at 5.) Here, there was evidence in the record of prejudice to the state "beyond the ordinary impact of any defendant's subsequent withdrawal of a guilty plea." *State v. Harris*, 10th Dist. No. 09AP-1111, 2010-Ohio-4127, ¶ 26. Accordingly, this factor weighs against appellant's motion to withdraw.

**{¶ 77}** Regarding the second factor, i.e., whether appellant was represented by highly competent counsel, the trial court found "there was no ineffective assistance of counsel" and that appellant's counsel "was well-prepared and professional throughout all the proceedings." (Aug. 4, 2020 Tr. at 65-66.) Upon review, the record supports those findings. We note that appellant, in arguing this factor, raises a number of allegations regarding his counsel's performance we have previously addressed above, including claims his counsel was deficient in: (1) failing to raise a speedy trial claim, (2) not objecting to the state's document dump, (3) engaging in insufficient pre-trial preparation, and (4) in the handling of discovery matters. Based on our disposition of the second and sixth assignments of error, appellant has failed to show his counsel's performance was professionally deficient as to those matters.

**{¶ 78}** We note appellant acknowledged during the hearing on the motion to withdraw that his counsel was "very, very competent. Did I have competent counsel? Yes." (Aug. 4, 2020 Tr. at 30.) Appellant asserted, instead, his counsel was not "cooperative," although appellant similarly acknowledged his counsel "doesn't think that I'm cooperative." (Aug. 4, 2020 Tr. at 30.) However, appellant's mere disagreement with his counsel's trial strategy, advice, or tactics does not reflect ineffective assistance of counsel. *See, e.g., State*

*v. Kamleh*, 8th Dist. No. 97092, 2012-Ohio-2061 ¶ 51 ("our standard of review in ineffective assistance of counsel cases does not permit us to find a violation of counsel's essential duties based on a mere disagreement with defense counsel tactics"). Accordingly, the second factor weighs against appellant's motion.

{¶ 79} As to the third factor, the record indicates appellant was afforded a full Crim.R. 11 hearing (as addressed and discussed in our consideration of appellant's seventh assignment of error). As noted by the state, appellant's contention that he did not make a full admission of guilt is refuted by the record. Specifically, the plea hearing includes the following colloquy between the court and appellant:

> THE COURT: Okay. So you understand if you plead guilty to these counts, that means you're making a complete admission that you committed an offense, those offenses?
>
> THE DEFENDANT: Yeah. Yes, I understand that they're going to drop fifty-five charges or sixty charges in return for me admitting to five charges.
>
> THE COURT: Okay. But I guess what I'm saying is, you understand pleading guilty means you're admitting you committed these five offenses.
>
> THE DEFENDANT: Yes.

(Feb. 4, 2020 Tr. at 6.)

{¶ 80} Because the trial court conducted a full and proper Crim.R. 11(C) hearing, this factor weighs against appellant's motion.

{¶ 81} With respect to the fourth factor, the record indicates the trial court provided appellant a full hearing on the motion to withdraw, and afforded him a full opportunity to explain why he should be permitted to withdraw his plea. At that hearing, as well as in his motion to withdraw, appellant raised concerns regarding discovery issues, including the "supplemental discovery" he argued was "dump[ed] * * * two weeks before trial." (Aug. 4, 2020 Tr. at 14.)

{¶ 82} The trial court, in addressing appellant's discovery concerns during the hearing, noted that "a number of the things that you cited in your motion * * * to withdraw the plea were either discovery issues that were already dealt with by the Court or other motions that, again, were dealt with * * * and which * * * at the time of your plea, you

acknowledged and decided you wanted to give those issues up and accept the State's offer." (Aug. 4, 2020 Tr. at 11.) The trial court questioned appellant's counsel during the hearing as to whether he still believed his client entered the plea freely and voluntarily, and counsel responded: "I do, Your Honor." (Aug. 4, 2020 Tr. at 35.) A review of the record indicates appellant was afforded a full opportunity to be heard on his motion, and therefore the fourth factor weighs against the motion.

{¶ 83} Regarding the fifth factor (i.e., whether the trial court gave full and fair consideration to the motion to withdraw), the trial court issued a decision on the motion to withdraw (filed August 5, 2020) setting forth consideration of the motion and the reasons for denying the motion. In its decision, the court concluded appellant "failed to provide a reasonable and legitimate basis for the withdraw[al] of his plea." (Aug. 5, 2020 Decision & Entry at 1.) The court found "no constitutional or criminal due process violation," and that "a full hearing" was held "in compliance with Crim.R. 11 to ensure that [appellant's] plea was entered knowingly, voluntarily, and intelligently." (Aug. 5, 2020 Decision & Entry at 1-2.) The court also found appellant "had highly-competent counsel present with him at the time of his plea and said counsel stated to this Court – both during the plea on February 4th and during the August 4th hearing – that it was counsel's belief that [appellant] entered his plea knowingly, voluntarily, and intelligently with a full understanding of his legal rights as well as the potential consequences of his plea." (Aug. 5, 2020 Decision & Entry at 2.) Finally, the trial court found "the timing and motivation behind [appellant's] motion to be suspect and that the State and its witnesses would be prejudiced if [appellant's] motion were to be granted." (Aug. 5, 2020 Decision & Entry at 2.)

{¶ 84} The trial court also addressed some of those reasons at the close of the hearing on the motion to withdraw, stating on the record it found "no constitutional or criminal rule due process violation that has occurred," citing the fact the state had prepared for a "three week trial," and further concluding the Crim.R. 11 hearing "was fully complied with * * * and that the plea was entered knowingly, voluntarily, and intelligently." (Aug. 4, 2020 Tr. at 64.)

{¶ 85} The record indicates the trial court gave full and fair consideration to the motion, and this factor weighs against appellant's motion.

{¶ 86} The sixth factor considers whether the motion was filed within a reasonable time. Here, appellant's motion was filed more than five months after entering the plea on February 4, 2020. As set forth above, the trial court found the "timing" of the motion suspect, and this factor weighs against granting the motion.

{¶ 87} The seventh factor requires consideration whether appellant set forth in his motion specific reasons for the withdrawal. In support of his pro se motion, appellant cited his claim the state "dumped evidence 2 weeks before trial," as well as claims the state withheld and/or denied him access to discovery materials, and that he believed, based on pending motions prior to his plea, "the plea would be a 'moot point' as the case would be dismissed as a matter of law." (July 13, 2020 Mot. to Withdraw Plea at 3-4.) Here, appellant's motion did provide reasons for seeking withdrawal of his plea and, "even if his specific reasons ultimately lack merit," this factor weighs in favor of appellant's motion. *State v. Cook*, 10th Dist. No. 20AP-519, 2021-Ohio-2416, ¶ 21.

{¶ 88} The eighth factor considers whether appellant understood the nature of the charges and the possible penalties. In addressing appellant's seventh assignment of error, we found, based on the totality of the circumstances, appellant understood the nature of the charges to which he pled guilty and that the plea was knowingly and voluntarily made. Accordingly, this factor weighs against the motion.

{¶ 89} The final factor considers possible defenses to the charges. In his pro se brief, appellant contends "[t]he securities laws were misapplied by charging [him] in this case," and that "[t]he laws have never been used to prosecute a financial representative for buying and selling stock of public companies." (Emphasis omitted.) (Appellant's Brief at 42.) In response, the state argues appellant has never asserted he had a defense to the charges or that he was innocent, and that his contention the law was misapplied does not constitute a defense.

{¶ 90} We agree with the state that appellant's conclusory assertion that the law (i.e., the provisions of R.C. Chapter 1707) was misapplied does not constitute a defense to the charges of securities fraud, nor do we find merit with appellant's claim the charges implicate a civil rather than criminal matter. *See, e.g.*, *Cook* at ¶ 23 (addressing ninth factor and noting appellant's attempt to "downplay the significance of his conduct," i.e., his "disagreement with the seriousness of the offenses" is different from asserting a possible

defense to charges); *State v. Caballero*, 10th Dist. No. 15AP-1132, 2016-Ohio-5496, ¶ 24, 27 (addressing ninth factor and finding appellant's alleged defenses based on "novel legal arguments" weighed against motion to withdraw).

{¶ 91} In balancing the nine factors, we find the majority of those factors weigh against the motion. As noted, in denying the motion, the trial court found appellant's motivation to be suspect, and the court "was in the best position to consider the credibility of appellant's arguments" during the hearing on his motion to withdraw. *State v. Burris*, 10th Dist. No. 13AP-238, 2013-Ohio-5108, ¶ 18. Upon review, the trial court did not abuse its discretion in finding appellant failed to articulate a reasonable and legitimate basis for withdrawal of his guilty plea.

{¶ 92} Accordingly, appellant's fourth assignment of error is not well-taken and is overruled.

{¶ 93} Under his fifth assignment of error, appellant contends the trial court erred in failing to grant his request for a continuance of the hearing on his motion to withdraw plea. Appellant contends he and his counsel "needed more time to meet and file a reply to the state's erroneous information in the memo contra." (Appellant's Brief at 46.)

{¶ 94} In response, the state argues appellant's motion failed to articulate any grounds to support a continuance, and that appellant failed to raise this issue at the hearing on his motion to withdraw plea. The state further notes that appellant's claim only applies to case No. 18CR-1232, in which appellant filed a pro se pleading.

{¶ 95} The record indicates appellant's pro se motion to withdraw guilty plea, filed July 13, 2020, was captioned "Mr. Halls' Motion to Withdraw Plea and a Continuance of Sentencing." As noted by the state, while the focus of his motion involved a list of reasons for withdrawal of the plea, his concluding paragraph requested that "the sentencing date of August 4, 2020 * * * be stricken so the parties can fully brief this motion and the many issues that are arising." (July 13, 2020 Mot. to Withdraw at 4.)

{¶ 96} In general, "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge," and a reviewing court "must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 97} As indicated, appellant contends on appeal that he and his counsel needed more time to respond to the state's "erroneous information in the memo contra." We have previously concluded, in addressing appellant's sixth assignment of error, appellant failed to specifically identify any erroneous information in the state's filing. Further, as noted by the state, appellant did not raise this issue during the hearing on the motion to withdraw. Upon review, we find no abuse of discretion by the trial court in failing to grant a continuance. *See State v. Sowders*, 4 Ohio St.3d 143, 144 (1983) (no abuse of discretion in failing to grant continuance where defense counsel "gave no specifics" to support contention he needed more time to adequately prepare a defense).

{¶ 98} Accordingly, appellant's fifth assignment of error is without merit (not well-taken) and is hereby overruled.

## IV. Conclusion

{¶ 99} Based on the foregoing, appellant's seven assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are hereby affirmed.

*Judgments affirmed.*

DORRIAN and JAMISON, JJ., concur.

———————————